433 P.2d 7

**CLINTON CITY, a municipal corporation of Utah, and Elwyn Parker, Plaintiffs and Appellants,**

**v.**

**D. Frank PATTERSON, Jack D. Patterson, Lewis B. Patterson, and F. David Patterson, dba Frank Patterson & Sons, Defendants and Respondents.**

**No. 10913.**

Supreme Court of Utah.

Oct. 25, 1967.

2. Missouri Pac. Ry. Co. v. Haynes, 1 Kan. App. 586, 42 P. 259, 261; Ozark Orchard Co. v. Kansas City Southern Ry. Co., 173 Mo.App. 450, 158 S.W. 884.

Critchlow, Watson & Warnock, A. M. Ferro, Ned Warnock, Salt Lake City, for appellants.

Glen E. Fuller, Salt Lake City, for respondents.

ELLETT, Justice:

On February 17, 1964, the Town Council of Clinton City enacted a zoning ordinance prohibiting any use of land within the confines of the town except as to certain exceptions therein set forth. The exception of concern here is subsection (1) of the ordinance, which reads as follows: "Agriculture as defined herein *and specifically excluding livestock feed lots.*" (Emphasis added.)

The town of Clinton City is a sparsely-settled area with a population of approximately 1600 people. The defendants are cattlemen and at the time the ordinance was enacted owned approximately 310 acres of farming land and 80 acres of pasture land. Some 12 acres of this land were enclosed into several adjacent pens separated by permanent fences and had permanently-fixed feeding mangers and watering facilities located therein. There were also some concrete slabs for cattle to stand upon when the ground was muddy.

The object of a feed lot is to confine the cattle and thus prevent their walking off the gain in weight which results from concentrated feeding. As cattle are fattened, they are sold, and other leaner cattle are brought in to be fattened in like manner. During the feed-lot operation, which is between April 1 and October 31, the defendants keep all told approximately 2500 head of cattle in their feed lots.

After the crops grown on the farm land are harvested, the remaining cattle consisting of the young and those not fat enough for sale are removed from the feed lots and kept on the farm land. Here they have room to run about, although most of their feed is hauled to them and placed in movable racks. Each day these racks are moved about 16 feet in a forward line so as to secure an even distribution upon the farm land of the fertilizing effects to be had from the cattle droppings. Such a method of feeding cattle avoids the need to have the fertilizer spread over the ground by mechanical means and avoids the muck and mire which wet winter weather would entail if the cattle were fed in one constant place.

■ The big problem posed by this appeal is due to the purchase by the defendants of 100 acres of farm land just 20 days prior to the effective date of the ordinance in question. A prior nonconforming use was established in regard to the feed lot, and there was credible evidence to justify the court's finding of such nonconforming use on the farm land other than the hundred acres above mentioned.

The defendants brought approximately 1,000 head of cattle onto this newly purchased land about November 1, 1964, and winter fed them according to their usual practice. The town claims the winter operation of cattle feeding constitutes the maintenance of a feed lot and initiated this suit to restrain the defendants from violating the zoning ordinance in question.

The defendants claim they are not in violation of the ordinance for the reason that their winter feeding operations cannot be classified as maintaining a feed lot.

It is to be noticed that the ordinance does not define what a feed lot is. In fact, it appears from the evidence that the Town Council itself had no clear conception of the meaning to be given to the ordinance. The mayor of the town testifying in regard to the meaning to be given to the ordinance as it related to the defendants' operation said: "Yes, Sir. This has been a matter of, not contention necessarily, but a question in the minds, I think, of everyone on the Council just what does constitute a feed lot as such."

■■ It would seem in such a situation that the meaning to be ascribed to the term would be the meaning which cattlemen in the vicinity would understand and use. The sum of the testimony from such men who were called to testify was that the winter feeding operation in the open fields did not constitute the maintenance of a feed lot. The trial court sitting without a jury, therefore, had sufficient evidence to make the finding that the defendants were not in violation of the ordinance of February 17, 1964.

■ However, the matter does not rest here. On June 3, 1965, a new ordinance

was enacted purporting to limit winter feeding of cattle to six head per acre and to not more than 250 head on any given piece of land regardless of its size. The defendants claim that this is special legislation designed against them and against no one else. The trial court did not rule upon the validity of the ordinance because by the time the new ordinance was enacted, the defendants had already established a nonconforming use to maintain 1,000 head of cattle upon the newly acquired land, and the court so found. See 101 C.J.S. Zoning §§ 180 and 184.

■ The trial court properly refused to rule on the validity of the ordinance because when a matter may be determined on grounds other than the validity of a statute or ordinance, it should be so determined, and if we can sustain the trial court without declaring a statute or ordinance invalid, it is our duty to do so. State v. Laplaca (Vt.), 224 A.2d 911; Charter Real Estate Company v. Chafee (R.I.), 225 A.2d 766; Salt Lake City v. Perkins, 9 Utah 2d 317, 343 P.2d 1106.

We think the evidence supports the findings made by the trial court, and there being no error apparent to us in the record, we affirm the decree. Each party will bear its own costs.

CROCKETT, C. J., and CALLISTER, TUCKETT and HENRIOD, JJ., concur.